# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| LORI J.,[1] | : | Case No. 3:22-cv-00029 |
| Plaintiff, | : | |
| | : | District Judge Thomas M. Rose |
| vs. | : | Magistrate Judge Caroline H. Gentry |
| | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[2]

## I.   INTRODUCTION

Plaintiff filed an application for Disability Insurance Benefits in March 2014. Plaintiff's claims were denied initially and upon reconsideration. After a hearing at Plaintiff's request, an Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. After the Appeals Council denied Plaintiff's request for review of that decision, Plaintiff filed an action with this Court.[3] The Court remanded the case to the Commissioner under Sentence Four of 42 U.S.C. § 405(g). The Appeals Council

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

[2] *See* 28 U.S.C. § 636(b)(1). The notice at the end of this opinion informs the parties of their ability to file objections to this Report and Recommendations within the specified time period.

[3] Assigned to Magistrate Judge Sharon L. Ovington, Case Number 3:17-cv-00187.

remanded the case pursuant to the District Court's order. A different ALJ held another hearing and again concluded that Plaintiff was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review of that decision, and Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. This matter is before the Court on Plaintiff's Statement of Errors (Doc. 8), the Commissioner's Memorandum in Opposition (Doc. 9), and the administrative record (Doc. 5). Plaintiff did not file a Reply.

## II.    BACKGROUND

Plaintiff asserts that she has been under a disability since June 19, 2012. At that time, she was thirty-six years old. Accordingly, Plaintiff was considered a "younger person" under Social Security Regulations during the period at issue.[4] *See* 20 C.F.R. § 404.1563(c). Plaintiff has a "high school education and above." *See* 20 C.F.R. § 404.1564(b)(4).

The evidence in the administrative record is summarized in the ALJ's decision (Doc. 5-17, PageID 3941-62), Plaintiff's Statement of Errors (Doc. 8), and the Commissioner's Memorandum in Opposition (Doc. 9). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

---

[4] The period at issue in this matter begins June 19, 2012, the alleged onset date of disability, and ends December 31, 2016, the date Plaintiff last met the insured status requirements of the Social Security Act. (Doc. 5-17, PageID 3944.)

### III. STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the

3

evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## IV. THE ALJ'S DECISION

### A. The ALJ's Findings of Fact

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. The ALJ made the following findings of fact:

> Step 1: Plaintiff did not engage in substantial gainful activity during the period at issue from the alleged onset date of June 19, 2012, through the date last insured of December 31, 2016.

4

| | |
|---|---|
| Step 2: | She had the severe impairments of "Osteoarthritis (OA) of the Bilateral Knees; Obesity; Labrum Tear and Degenerative Joint Disease (DJD) of the Right Hip; Depressive Disorder; and Anxiety Disorder." |
| Step 3: | She did not have an impairment or combination of impairments that met or equaled the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
| Step 4: | Her residual functional capacity (RFC), or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consisted of light work as defined in 20 C.F.R. § 404.1567(b), subject to the following limitations: "(1) never climb ladders, ropes and scaffolds; (2) occasionally crouch and crawl; (3) frequently climb ramps and stairs, stoop and kneel; (4) avoid unprotected heights, dangerous equipment and commercial driving; (5) able to perform simple, routine tasks, but not at a production-rate pace and without strict performance quotas; (6) occasional interaction with supervisors, coworkers, and the general public; (7) able to tolerate occasional changes to a routine work setting defined as 1-2 per week."<br><br>She was unable to perform any of her past relevant work. |
| Step 5: | Through the date last insured, considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that she could have performed. |

(Doc. 5-17, PageID 3944-61.) These findings led the ALJ to conclude that Plaintiff did not meet the definition of disability and so was not entitled to benefits. (*Id.* at PageID 3961.)

### B. Psychologist Gordon Harris, Ph.D.

Non-treating psychologist Gordon Harris, Ph.D. evaluated Plaintiff in August 2014. (Doc. 5-12, PageID 1910-15.) Dr. Harris evaluated Plaintiff at the request of the

5

Bureau of Workers Compensation, specifically for the purpose of considering whether individual therapy sessions should be approved. (*Id.* at PageID 1910.)

Plaintiff told Dr. Harris that she was previously depressed "100% of the time," and she rated her depression as a nine or ten (on a scale of one to ten, with ten the highest) in the past. (Doc. 5-12, PageID 1912.) Plaintiff reported that she currently felt depressed "90% of the time," and she rated her current symptoms as only a three or four on a scale of one to ten. (*Id.*) Plaintiff additionally said that on a typical day, she was able to go shopping, run errands with friends, and spend time with family. (Doc. 5-12, PageID 1913.) She said she was able to do word search puzzles but was not able to concentrate for "very long." (*Id.*) Asked about housework, Plaintiff said she cooked—but not every day—and would "stand and look at things that need to be done." (*Id.*) She said she did laundry once every two weeks. (*Id.*) Plaintiff described a low energy level and stated that she stayed in bed "a lot." (*Id.*) According to Plaintiff, she bathed only two or three times per week; she said that she bathed five to seven times per week when she was participating in weekly therapy sessions. (*Id.*) Regarding socialization, Plaintiff reported that although she no longer participated in some hobbies, she still enjoyed going out with friends, including going out to karaoke bars. (*Id.*)

Dr. Harris observed that Plaintiff presented as pleasant and cooperative, fully oriented, and well-versed. (Doc. 5-12, PageID 1911.) Dr. Harris also documented good eye contact, a coherent stream of conversation, and no unusual emotional reactions. (*Id.*) Plaintiff denied anxiety. (*Id.* at PageID 1912.) According to Dr. Harris, Plaintiff exhibited a limited awareness of current events, but she showed no significant difficulty with

6

recalling numbers or naming the current and past presidents. (*Id.* at PageID 1914.) Dr. Harris reported that when presented with serial seven tasks, Plaintiff "worked well though the first [eleven] subtractions at which time she indicated she was lost and could not continue." (*Id.*) Dr. Harris further indicated that Plaintiff exhibited adequate judgment and abstract thinking. (*Id.*)

According to Dr. Harris, Plaintiff showed a "reduction in her overall level of emotional distress and a significant reduction in her somatic complaints." (Doc. 5-12, PageID 1914.) Dr. Harris otherwise concluded that Plaintiff's clinical profile "was remarkably similar to that obtained by [a prior evaluator] in 2012." (Doc. 5-12, PageID 1914.) Dr. Harris acknowledged that Plaintiff continued to "manifest a clinically significant level of low positive emotions" and experienced "feelings of helplessness as well as stress and worry." (*Id.*) But he reported that "[t]he majority of her other clinical skills were within normal limits." (*Id.*)

In the Summary and Conclusions section of his report, Dr. Harris offered his opinion that Plaintiff's current medical treatment was "reasonably related" to her workplace injury. (Doc. 5-12, PageID 1914.) According to Dr. Harris, the intense weekly therapy sessions "ha[d] not provided significant results," and "a lesser level of psychotherapy, such as biweekly sessions, [was] likely to be just as beneficial as weekly sessions." (*Id.* at PageID 1915.) The ALJ gave "significant weight" to Dr. Harris' opinion. (Doc. 5-17, PageID 3948.) The ALJ reasoned that Dr. Harris' opinion was supported by the objective testing that Dr. Harris administered. (*Id.*)

### C. VE Testimony

The vocational expert (VE) initially testified that a hypothetical individual of Plaintiff's age, education, and work experience—and with the ALJ's RFC for a reduced range of light work—would be unable to perform Plaintiff's past relevant work but could perform other jobs in the national economy.[5] (Doc. 5-17, PageID 3998-4000.) In response to additional hypothetical questions, the VE testified that an individual who would be off-task more for more than ten percent of the workday or would miss more than one day of work per month would be unable to maintain "competitive employment." (*Id.* at PageID 4001-02.)

### V. LAW AND ANALYSIS

Plaintiff does not dispute the medical summary set forth in the ALJ's opinion. (Doc. 8, PageID 5212.) Instead, Plaintiff contends that the ALJ "incorrectly created and relied on [an RFC] that produced relevant work while evaluating [Plaintiff] under prong five of the sequential process." (Doc. 8, PageID 5213.) According to Plaintiff, the ALJ erred by failing to include restrictions in the RFC for "off task allowances in the workplace, or absences, due to [Plaintiff's] physical and mental impairments." (*Id.* at PageID 5213-14.) Plaintiff additionally asserts that the ALJ gave significant weight to non-treating psychologist Dr. Harris but failed to include a corresponding limitation for

---

[5] The representative jobs and job numbers that the ALJ cited at Step 5 (Finding Number 10) correspond with a subsequent hypothetical question containing the RFC in the ALJ's decision, but with the following additional limitations: the ability to alternate positions between sitting and standing every twenty minutes while at the workstation, and occasional (versus frequent) climbing ramps and stairs, stooping, kneeling, crouching, and crawling. (*Compare* Doc. 5-17, PageID 3961, *with* Doc. 5-17, PageID 3999-4000.) However, because the job numbers cited by the ALJ in the decision account for a more restrictive RFC (i.e., Plaintiff would be able to perform those job numbers even with the less restrictive RFC that the ALJ cited in the decision), this is a harmless error.

8

being "away from the workplace at a minimum [of] two times a month for therapy." (*Id.* at PageID 5214.) Finally, Plaintiff contends that the ALJ failed to "fully consider the testimony of the vocational expert." (*Id.* at PageID 5215.) These arguments are not persuasive. For the reasons discussed below, the Court finds that the ALJ's findings are supported by substantial evidence.

A. **Applicable Law**

A claimant's residual functional capacity (RFC) is "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). The Social Security regulations, rulings, and Sixth Circuit precedent charge the ALJ with the final responsibility for determining a claimant's RFC. *See, e.g.*, 20 C.F.R. § 404.1527(d)(2) (the final responsibility for deciding the RFC "is reserved to the Commissioner"); 20 C.F.R. § 404.1546(c) ("the [ALJ] . . . is responsible for assessing your [RFC]"); *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) ("the ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an 'assessment of [her] [RFC]'").

The Commissioner determines the claimant's RFC based on relevant evidence in the record, including objective medical evidence, medical opinions, other medical evidence, evidence from non-medical sources, and prior administrative medical findings. *See* 20 C.F.R. § 404.1545(a)(1)-(5). Consistent with applicable regulations, an ALJ may also rely on the testimony of a vocational expert. 20 C.F.R. §§ 404.1560(b)(2), 404.1566(e). "Substantial evidence may be produced through reliance on the testimony of a VE in response to a 'hypothetical' question, but only 'if the question accurately

9

portrays [Plaintiff's] individual physical and mental impairments.'" *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

### B. The ALJ's RFC Is Supported by Substantial Evidence

Plaintiff contends that due to her physical and mental impairments, the ALJ should have included a limitation in the RFC for "off task allowances in the workplace, or absences." (Doc. 8, PageID 5214.) Therefore, she argues that she could not perform any work in significant numbers in the national economy.

Plaintiff's contentions are not well-taken. Her argument is based on speculation, not any objective medical evidence. Plaintiff did not cite to a medical opinion that she would consistently be off-task or miss work. Additionally, the ALJ provided a detailed summary of Plaintiff's medical records and treatment history, which Plaintiff does not dispute. (Doc. 5-17, PageID 3944-59; Doc. 8, PageID 5212.)

Plaintiff recites many of her subjective complaints and testimony—and she identifies several diagnoses and medical opinions—to challenge "the ALJ's interpretation" of the medical evidence. (Doc. 8, PageID 5214-15.) But the substantial evidence standard precludes this Court from weighing the evidence and deciding whether the preponderance of the evidence supports a different conclusion. *Biestek*, 139 S. Ct. at 1154 (2019). Specifically, this Court may only determine whether the ALJ's findings are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*.

The Court finds that the ALJ's findings are supported by substantial evidence. The ALJ acknowledged many of Plaintiff's subjective musculoskeletal complaints which included allegations of low back and hip pain, right knee pain, and difficulty with activities such as sitting, standing, walking, and climbing stairs. (Doc. 5-17, PageID 3943-59.) He also acknowledged Plaintiff's subjective complaints to medical providers which included decreased range of motion, numbness, stiffness, and overall difficulty with completing activities of daily living. (*Id.*)

The ALJ then summarized the medical records that documented Plaintiff's treatment for her physical conditions and pain complaints. (Doc. 5-17, PageID 3944-46, 3954-59.) The ALJ acknowledged that although a December 2015 right knee MRI showed a medial meniscal tear, Plaintiff underwent a partial medial meniscectomy a few months later in July 2016. (*Id.* at PageID 3946, 3956.) The ALJ also cited to a 2012 bone scan which showed no right hip abnormalities and September 2015 right hip x-rays which showed only mild osteoarthritis. (*Id.* at PageID 3945, 3955.) Further, the ALJ cited to several examinations which showed moderate right knee tenderness and effusion, moderate tenderness to palpation of the right hip and moderately limited range of motion, and a mildly to moderately antalgic gait (Doc. 5-17, PageID 3945-46, 3955-56.) The ALJ compared these examination findings to other examinations which showed no lateral or medial bilateral instability, negative apprehension signs and patellar grind tests, full and intact motor strength in the lower extremities, normal sensation, normal reflexes, no crepitance of the right hip, and a normal gait and station. (Doc. 5-17, PageID 3945-46, 3955-56.)

The ALJ concluded that the balance of the objective and other evidence did not support Plaintiff's allegations of symptom severity. (Doc. 5-17, PageID 3957-59.) He explained that Plaintiff's testimony about her limitations was not fully consistent with the objective medical evidence. (*Id.* at PageID 3959.) The ALJ accounted for this evidence by limiting Plaintiff to the reduced range of light work in the RFC. (*Id.* at PageID 3957-59.) These conclusions are supported by substantial evidence.

The ALJ's conclusions about Plaintiff's mental impairments are also supported by substantial evidence. The ALJ acknowledged Plaintiff's testimony about her mental impairments and her subjective complaints to her mental health providers. (Doc. 5-17, PageID 3944, 3946-51.) For example, the ALJ cited to Plaintiff's complaints of depression and anxiety, which she said caused difficulty with concentration, social interactions, and completing activities of daily living. (*Id.*) The ALJ also acknowledged Plaintiff's complaints of sleep disturbance, fatigue, concentration difficulties, decreased motivation and energy, and feelings of hopelessness. (*Id.*)

The ALJ compared these complaints to the mental health treatment and evaluation records. The ALJ acknowledged Plaintiff's history of behavioral health treatment and prescribed psychotropic medications. (Doc. 5-17, PageID 3946.) The ALJ also acknowledged that some mental status examinations showed depressed moods and a congruent affect, some tearfulness, irritability, psychomotor agitation, deficits in verbal communication, impaired concentration, and distractibility. (Doc. 5-17, PageID 3949-54.) Yet the ALJ also cited to examinations which showed only mild depression, an ability to follow oral instructions, adequate cognitive functioning, and good memory, attention, and

concentration. (*Id.*) Additionally, the ALJ explained that Plaintiff reported on several occasions that she was feeling better, was able to go out to eat and visit with friends, and was overall doing better with treatment. (*Id.*)

The ALJ concluded that the balance of the objective evidence relating to Plaintiff's mental condition did not support Plaintiff's allegations of symptom severity. (Doc. 5-17, PageID 3957-59.) Further, the ALJ accounted for this evidence by limiting Plaintiff to the range of simple, routine tasks as identified in the RFC. (*Id.* at PageID 3955.) These findings are supported by substantial evidence.

Finally, the ALJ did not err in his analysis of the medical opinion evidence. Because Plaintiff's claim was filed before March 27, 2017, the opinion evidence rules set forth in 20 C.F.R. § 404.1527 apply. These regulations require ALJs to adhere to certain standards when weighing medical opinions. First, the ALJ is required to consider and evaluate every medical opinion in the record. *See* 20 C.F.R. § 404.1527(b), (c). Further, "greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (citations omitted). The regulations define a "treating source" as a claimant's "own acceptable medical source who provides . . . medical treatment or evaluation and who has . . . an ongoing treatment relationship" with a claimant. 20 C.F.R. § 404.1527(a)(1). The "treating physician" rule is straightforward: "Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the

13

other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723 (6th Cir. 2014).

If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson v. Comm'r of Soc. Sec,* 378 F.3d 541, 544 (6th Cir. 2004)).

"Separate from the treating physician rule, but closely related, is the requirement that the ALJ 'always give good reasons' for the weight ascribed to a treating-source opinion." *Hargett v. Comm'r of Soc. Sec.*, 964 F.3d 546, 552 (6th Cir. 2020) (citing 20 C.F.R. § 404.1527(c)(2); other citation omitted)); *see Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Hargett*, 964 F.3d at 552 (quoting SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996))[6]. The goal is to make clear to any subsequent reviewer the weight given and the reasons for giving that weight. (*Id.*) Substantial evidence must support the reasons provided by the ALJ. (*Id.*)

---

[6] SSR 96-2p has been rescinded. However, this rescission is effective only for claims filed on or after March 27, 2017. See SSR 96-2p, 2017 WL 3928298 at *1. Because Plaintiff filed his application for benefits prior to March 27, 2017, SSR 96-2p still applies in this case.

14

As for medical opinions from sources that are not "treating sources" as defined in 20 C.F.R. § 404.1527(a)(1), the ALJ must consider the following factors set forth for the evaluation of medical opinions: examining relationship; treatment relationship; supportability; consistency; specialization; and other factors. 20 C.F.R. § 404.1527(c).

Plaintiff challenges only the ALJ's analysis of Dr. Harris' opinion. (Doc. 8, PageID 5214.) And Plaintiff does not challenge the weight that the ALJ assigned to Dr. Harris' opinion or his reasoning for assigning such weight. (*Id.*) Instead, Plaintiff contends only that the ALJ gave significant weight to Dr. Harris' opinion but failed to include a corresponding limitation for being "away from the workplace at a minimum [of] two times a month for therapy." (*Id.*) Plaintiff's contention is not well-taken.

As discussed above, Dr. Harris offered his opinion that intense weekly therapy sessions "ha[d] not provided significant results," and "a lesser level of psychotherapy, such as biweekly sessions, [was] likely to be just as beneficial as weekly sessions." (Doc. 5-12 PageID 1915.) Yet contrary to Plaintiff's assertion, Dr. Harris did not opine that attending therapy sessions twice per month would conflict with Plaintiff's ability to work. *See Katherine K. v. Comm'r of Soc. Sec.*, No. 1:20-CV-563, 2022 WL 71628, at *9 (S.D. Ohio January 7, 2022) (Likovitz, M.J.) Nor did Dr. Harris indicate that Plaintiff would be unable to attend these therapy sessions "after work, on the weekends, during lunch, or on some other schedule." *See id.,* citing *Pryor v. Comm'r of Soc. Sec.*, No. 14-13325, 2015 WL 12683977, at *7 (E.D. Mich. Aug. 21, 2015), *report and recommendation adopted*, No. 14-1325, 2015 WL 6735336 (E.D. Mich. Nov. 4, 2015). Additionally, Plaintiff did not set forth any facts to support such a conclusion. And so the ALJ's assignment of

15

significant weight to Dr. Harris' opinion does not conflict with the ALJ's RFC—and the ALJ did not err by failing to include an additional limitation for off-task behavior or absenteeism. Accordingly, substantial evidence supports the ALJ's RFC.

      C.      **Substantial Evidence Supports the ALJ's Step Five Finding**

Plaintiff argues that the ALJ erred by finding that Plaintiff does not require either of the work-preclusive limitations the ALJ included in the additional VE hypotheticals. (Doc. 8, PageID 5215.) Plaintiff contends that the ALJ "failed to fully consider essential vocational expert testimony" and so the ALJ erred by failing to account for:

> absences or off task behavior that would result from [Plaintiff's] pain as a result of her physical conditions, mental impairments as a result of her depression and anxiety as fully discussed in ALJ Adkin's decision, and a medical opinion, that ALJ Adkins afforded significant weight, which opines that two therapy sessions a month are required for Ms. Johnson's mental health treatment.

(*Id.*) Plaintiff's assertion is not well-taken.

Plaintiff correctly summarized the VE's testimony that the limitations for off-task behavior and absenteeism would be work-preclusive. However, the fact that the ALJ asked the VE about a hypothetical person with particular limitations does not mean that the VE's answer is binding on the ALJ. Simply posing a hypothetical question to the VE does not result in a finding about a claimant's RFC or bind the ALJ where the medical record does not support the inclusion of such limitations. *Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 170 (6th Cir. 2020) (citing *Kessans v. Comm'r of Soc. Sec.*, 768 F. App'x 531, 536 (6th Cir. 2019)). "An administrative law judge is only required to include in the residual functional capacity those limitations he finds credible and supported by the

16

record." *Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 170 (6th Cir. 2020) (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)).

Plaintiff's argument, then, presumes that the additional hypotheticals posed to the VE accurately represent Plaintiff's RFC. Yet Plaintiff did not cite to a medical source that opined that Plaintiff would be off task for more than ten percent of the workday or require more than one absence per month. And as discussed above, the ALJ's RFC—which did not include any such restrictions—was supported by substantial evidence. Accordingly, this portion of the VE's testimony was not relevant to the ALJ's decision.

A disability claimant bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512. The burden is on a claimant to furnish medical and other evidence about her impairments and the effects of her impairments on the ability to work. *Id.* Here, Plaintiff has not shown that the ALJ erred by failing to include additional restrictions in the RFC for being off task or absent from work. As discussed above, the ALJ thoroughly evaluated the medical evidence related to Plaintiff's impairments and explained his reasons for including the related functional restrictions in the RFC. (Doc. 5-17, PageID 3944-59). Plaintiff has not shown that the evidence before the ALJ required the inclusion of greater limitations than those found by the ALJ. Nor has Plaintiff shown that the ALJ erred when he failed to rely on VE testimony that did not accurately reflect Plaintiff's functional limitations. Plaintiff has not met her burden of proving that the ALJ's decision is unsupported by substantial evidence, and so it cannot be overturned by this Court.

## VI. CONCLUSION

In sum, substantial evidence supports the ALJ's RFC and his decision to exclude limitations for off-task behavior in excess of ten percent and absences occurring more than once per month. The ALJ, therefore, did not err when he relied on the VE's testimony in response to the hypothetical question that corresponded with the RFC. Plaintiff's assertions to the contrary are without merit and should be overruled.

**IT IS THEREFORE RECOMMENDED THAT**:

1. Plaintiff's Statement of Errors (Doc. 8) be OVERRULED;
2. The Court AFFIRM the Commissioner's non-disability determination; and
3. The case be terminated on the Court's docket.

                                           */s/ Caroline H. Gentry*
                                           Caroline H. Gentry
                                           United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days if this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).